## 18236

The NORTH RIVER INSURANCE COMPANY, Appellant, v. Lawrence GIBSON, Carolyn Floyd Long, Administratrix of the Estate of John W. Long, and Charles W. Gambrell, Receiver for Guaranty Insurance Exchange, Respondents.

(137 S. E. (2d) 264)

*Messrs. Bridges & Bridges,* of Florence, *for Appellant,*

*Messrs. Hyman & Morgan,* of Florence, *for Respondent,*

*Messrs. Bridges & Bridges,* of Florence, *for Appellant, in Reply.*

July 2, 1964.

BRAILSFORD, Justice.

Lawrence Gibson sued Carolyn Floyd Long, as administratrix of the estate of John W. Long, for damages arising out of an automobile collision which occurred on September 14, 1961. Defense of the action was undertaken by Guaranty Insurance Exchange, the liability insurance carrier on the Long automobile. During the pendency of the action (on

September 4, 1962) a receiver was appointed for Guaranty. The receiver notified the administratrix of the Long estate that he did not have sufficient funds to continue the defense of the action, and counsel who had been employed by Guaranty obtained an order of court authorizing their withdrawal. Thereupon Gibson notified the North River Insurance Company, the liability carrier on his automobile, that he would look to it, under the uninsured motorist endorsement of his own policy, for the payment of any judgment recovered by him in the tort action. North River then brought this action against Gibson and others to have the rights of the parties determined, contending that Gibson had no coverage under the clause relied upon, because the operation of the Long automobile was covered by liability insurance at the time of the collision. The answers filed in the action raised no material issue of fact, and North River moved for judgment on the pleadings. The circuit court held that the uninsured motorist coverage provided by Gibson's policy is applicable, and that, within the statutory limits, North River will be liable for any judgment recovered by Gibson in the tort action. This appeal by North River challenges the correctness of the court's conclusion.

The applicable statute, Section 46-750.14, Code of Laws of 1962, requires that automobile liability insurance policies issued or delivered in this state contain an endorsement obligating the company to pay to the insured, within prescribed limits, such sum as he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle. At the time of this accident, an "uninsured motor vehicle" was defined by Section 46-750.11 (3) as "a motor vehicle as to which there is no * * * liability insurance * * *, or there is such insurance, but the insurance company * * * denies coverage thereunder. * * * A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown."

This definition extends the reach of Section 46-750.14 to certain situations in which the tort feasor is not, literally,

the operator of an uninsured motor vehicle at the time of the collision. Under this definition, the issue is not controlled by the existence of insurance on the Long automobile at the time of the accident. The real question is whether Guaranty has effectively denied coverage, within the meaning of the statute.

Appellant insists that the rights of the parties with respect to this insurance coverage must be determined as of the date of the collision and relies heavily upon the decision in *Hardin v. American Mutual Fire Ins. Co.,* 261 N. C. 67, 134 S. E. (2d) 142. In that case the Supreme Court of North Carolina denied recovery under an uninsured motorist endorsement where the tort feasor was insured by Guaranty Insurance Exchange, the same insolvent involved here, on November 18, 1961, when the collision occurred, and Guaranty continued in business for some ten months thereafter. However, the decision is not persuasive here, because the North Carolina statute did not extend the scope of the term "uninsured motor vehicle" beyond its ordinary meaning by definition. The critical question under the terms of the North Carolina statute and the policy endorsement was whether the tort feasor was driving an insured automobile at the time of the collision. As has been seen, this appeal turns, instead, on whether there has been a denial of coverage by Guaranty. This question, arising under the terms of our statute, refutes the claim that the rights and liabilities of the parties must be determined as of the time of the collision, because any such denial would almost always be subsequent to the accident.

Our statute on uninsured motorist coverage was modeled after the Virginia statute (*Laird v. Nationwide Insurance Co.,* 243 S. C. 388, 134 S. E. (2d) 206), which contained a similar definition of "uninsured motor vehicle." *State Farm Mutual Automobile Ins. Co. v. Brower,* 204 Va. 877, 134 S. E. (2d) 277, is the only authority which has been called or come to our attention in which this definition has

been applied to facts similar to those with which we deal. The question in that case was whether an insurance company which had been placed in the hands of a receiver some three months after its insured had been involved in an accident, and had, consequently, defaulted in its contractual obligations, had denied coverage within the meaning of the statute. We quote from the opinion:

"There is no apparent reason why the words in the phrase 'denies coverage' should not be given their natural and commonly understood meaning in the context in which they are used.

" 'To deny means to withhold, to refuse to grant.' Ballentine's Law Dict., p. 360. A person in distress is denied help when one who hears his cries says nothing but walks away.

\* \* \*

"An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give. Here National has failed to give Mazza protection against the damages he has 'become legally obligated to pay' which National specifically promised to pay for him. Its failure to appear, to defend and to pay was a denial of coverage within the meaning of § 38.1-381(c) (ii), and Mazza's car was therefore 'an uninsured motor vehicle.' "

The interpretation arrived at by the Supreme Court of Virginia is consistent with the language of the statute and with its spirit and purpose. We are convinced of its soundness and hold that Guaranty's receiver effectively denied coverage when he withdrew from the defense of the action against Long's administratrix.

The statute was amended in 1963 so as to expressly provide in the definition of "uninsured motor vehicle" for situations where "there was such insurance, but the insurance carrier who wrote the same is declared insolvent \* \* \*." 1963 Code Supplement Section 46-750.31-(3) (c). Appellant contends that the adoption of this amend-

ment amounted to a legislative declaration that no coverage was provided in a like situation under the terms of the original act. We recognize the rule of construction that the adoption of an amendment which materially changes the terminology of a statute under some circumstances indicates persuasively and raises a presumption that a departure from the original law was intended. However, like all rules of construction, the presumption is merely an aid in interpreting an ambiguous statute and determining the legislative intent. The presumption is strongest "in the case of an isolated independent amendment * * * and * * * is of little force in respect of amendments adopted in a general revision or codification of the laws." 82 C. J. S., Statutes, § 384b, (2), page 906. See also,· Am. Jur., Statutes, Section 275, page 261.

The amendment in question was accomplished by ■ Act No. 312 of the Acts and Joint Resolutions of 1963, 53 St. at Large, p. 526, which was a general revision of code sections relating to "the registration and licensing of uninsured motor vehicles, motor vehicle liability policies and definitions used in the Motor Vehicle Responsibility Act." We agree with the circuit court that the purpose and effect of the amendment was to clarify rather than to broaden the coverage afforded by the statute. 82 C. J. S., Statutes, § 243a, page 411, note 88.

Affirmed.

TAYLOR, C. J., and Moss, LEWIS, and BUSSEY, JJ., concur.